Harry R. Portman v. Commissioner.
Portman v. Commissioner
Docket No. 109326.
United States Tax Court
1943 Tax Ct. Memo LEXIS 237; 2 T.C.M. (CCH) 303; T.C.M. (RIA) 43297; June 23, 1943
*237 Harry R. Portman, 5234 Courteen Pl., North Hollywood, Calif., pro se. Byron M. Coon, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent determined a deficiency of $31.44 in the petitioner's income tax for 1939. The only issue presented is whether the petitioner is entitled to a credit of $800 for dependents on the ground that he was the chief support of his father and mother during the taxable year. Findings of Fact The petitioner is a resident of North Hollywood, California, and filed his income tax return for 1939 with the Collector at Los Angeles. About 1928 and on premises adjacent to those on which the petitioner now resides, the petitioner's father began the operation of a poultry business for the production of eggs. The premises so used consisted of a lot approximately 125 feet wide by 310 feet long, on which stood a dwelling and some poultry sheds. The premises were owned by a brother of petitioner's mother and were occupied rent free. The poultry business was profitable until about 1932, when it began declining. In December 1939, the father was 76 years old. In 1939 he had about 2,000 chickens. He was sick a considerable *238 part of the year, and because of his age and physical condition was not able to give the chickens proper attention. As a result, a lot of them died. In October 1939, he had an attack which rendered his completely unable to attend to them and a man who lived nearby was employed. Between 1932, when the father's poultry business began to decline, and 1939, his indebtedness to a local grain company for chicken feed had grown to a substantial amount. The eggs produced in 1939 prior to the father's attack just about paid the current feed bill. In October 1939, it was realized that receipts from the business would not amount to the expenses, and through an arrangement with the grain company all of the chickens except about 300 were sold and the entire proceeds applied on the indebtedness owing by the father to that company for chicken feed. The remaining chickens were looked after by the petitioner's mother and his son until shortly before the death of the petitioner's father in July 1940, when they were sold. After completing payment of the feed bill, there remained only $32 from the proceeds of the sale. From 1932, when the poultry business began to decline, the petitioner contributed *239 varying and increasing amounts to the support of his father and mother. The father was in the hospital twice in 1940 and the proceeds from his insurance were insufficient to defray his funeral expenses. The petitioner paid his father's hospital and doctor bills in 1939 and 1940 and nothing remained from the insurance to reimburse him for those payments. The petitioner's mother died in December 1942. Neither the petitioner's father nor mother had any source of income other than the poultry business, and from time to time during 1939 the petitioner furnished the money to pay their grocery bills and incidental expenses, including their water, light and gas bills. In addition, he paid the taxes on the premises on which they lived and which were also used in the poultry business. The petitioner kept no record of the expenditures and advances so made. His wife did keep an informal memorandum of some, if not all, of the expenditures. This memorandum disclosed that the advances amounted to at least $675 for 1939. During 1939 the petitioner's father and mother were incapable of self-support and received their chief support from the petitioner. Opinion In his 1939 income tax return, the *240 petitioner took a deduction for bad debts of $675 for money furnished to or for his father and mother in that year. A deduction of $175 was also taken for contributions. The respondent disallowed both deductions. As to the deduction claimed for contributions, no issue is here presented. The petitioner alleges and contends that he erred in claiming the $675 as a deduction for bad debts and instead should have claimed a credit of $800 for dependents on account of his support of his father and mother. From the evidence presented, we have found that during the taxable year the petitioner was the chief support of his father and mother, who were incapable of supporting themselves. Accordingly, we hold that for 1939 the petitioner was entitled to the credit claimed. Section 25(b)(2), Internal Revenue Code. Decision will be entered under Rule 50.